# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $712,528.82 | 10-03-2023 | 10-03-2033 | 3040048217 | 13 | 0000162655-02 | 060 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MAD GAFFER, CORP.
174 KELLEYTOWN RD
BERNARD, ME 04612-3645

**Lender:** Machias Savings Bank
Ellsworth Office
93 High Street
Ellsworth, ME 04605

**Principal Amount: $712,528.82** **Date of Note: October 3, 2023**

**PROMISE TO PAY. MAD GAFFER, CORP. ("Borrower") promises to pay to Machias Savings Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Hundred Twelve Thousand Five Hundred Twenty-eight & 82/100 Dollars ($712,528.82), together with interest on the unpaid principal balance from October 3, 2023, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT.** Borrower will pay this loan in 50 payments of $20,827.57 each payment. Borrower's first payment is due November 3, 2023, and all subsequent payments are due on the same day of each month after that, except the months of January, February, March, April, May, June and July when no payments will be due. Borrower's final payment will be due on October 3, 2033, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST RATE ADJUSTMENT.** Borrower agrees that the interest rate as set forth in the section titled "PROMISE TO PAY" may also change under the terms and conditions of this interest rate adjustment section. Following the first five (5) years of this note the interest rate will convert to an adjustable rate promissory note adjusting on a daily basis as hereinafter provided. When this note converts to an adjustable rate, the Lender shall review the interest rate daily. Any change in rate shall be effective on the date the interest rate changes. The adjusted rate will be two (2.00%) percent above (greater than) the Wall Street Journal Prime in effect. When this note converts to a variable rate and at twelve (12) month intervals thereafter, the Lender shall adjust the monthly payment amount by re-amortizing the principal balance over the remaining term of the loan. The new payment amount will be due for the next payment following the re-amortization; all such adjustments are subject, however, to the terms set forth below. Interest rate increases are optional with the noteholder; interest rate decreases are mandatory. The interest rate shall never be lower than five (5.00%) percent.

**Interest Calculation Method. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.**

**Prepayment Penalty; Minimum Interest Charge.** In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $25.00. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: If Bank's loan is prepaid within the first five (5) years, as defined in the Interest Rate Section of this Note, a prepayment premium will apply to the amount being prepaid. The prepayment premium will be 5% of the prepaid amount in the first year, 4% of the prepaid amount in the second year, 3% of the prepaid amount in the third year, 2% of the prepaid amount in the fourth year, and 1% of the prepaid amount in the fifth year. Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Machias Savings Bank, P.O. Box 318 Machias, ME 04654.

**Late Charge.** If a payment is 11 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment.

**Interest After Default.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 4.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond

for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: cures the default within fifteen (15) days; or if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**Lender's Rights.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**Attorneys' Fees; Expenses.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**Waive Jury. Borrower hereby expressly and voluntarily waives any and all rights, whether arising under the Maine constitution, and any Rules of Civil Procedure, common law or otherwise, to demand a trial by jury in any action, suit, proceeding or counterclaim involving Lender as to any matter, claim or cause of action whatsoever arising out of or in any way related to any agreement or loan with Lender or any of the transactions contemplated between the parties.**

**Governing Law. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maine without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Maine.**

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of HANCOCK County, State of Maine.

**Right of Setoff.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**Collateral.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

a Commercial Security Agreement dated October 3, 2023 made and executed between MAD GAFFER, CORP. and Lender on collateral described as:

1996 NORTH SHORE 40' CFV "JAEGER" ME REG: ME-5374K

a Preferred Ship Mortgage dated October 3, 2023 made and executed between MAD GAFFER, CORP. and Lender on a vessel described as:

2022 H&H 46' CFV "MEOW" Official Number #1324626

**Successor Interests.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Machias Savings Bank P.O. Box 318 Machias, ME 04654.

**COMMERCIAL PURPOSES.** Borrower intends to use the loan proceeds solely for business or commercial related purposes.

**FINANCIAL STATEMENTS.** Upon request by the Lender, Borrower will furnish Lender with, as soon as available, but in no event later than one hundred twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by Borrower. All financial reports required to be provided under this Note shall be prepared in accordance with accounting principles acceptable to Lender, applied consistent basis, and certified by Borrower as being true and correct.

**General Provisions.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MAD GAFFER, CORP.

By: ______________________________
JEFFREY GREY, President of MAD GAFFER, CORP.

LENDER:

MACHIAS SAVINGS BANK

X ______________________________
Amanda Tupper, AVP, Branch Manager

LaserPro, Ver. 23.2.20.003 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - ME C:\LASERPRO\CFI\LPL\D20.FC TR-378 PR-7